IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JOHN WENDELL MOORE and )
BRANDON KIRK JONES, )
)
Plaintiffs, )
)
v. ) 1:04CV396
)
TOWN OF CHAPEL HILL, a municipal )
corporation; GREGG JARVIES, individually )
and in his capacity as Chief of Police for the )
Town of Chapel Hill; EVERETT JOHNSON, )
individually and in his capacity and Police )
Captain for the Town of Chapel Hill; and )
W. CALVIN HORTON, individually and in )
his capacity as Town Manager for the )
Town of Chapel Hill, )
)
Defendants. )

## MEMORANDUM OPINION

Beaty, District Judge.

This matter is before the Court on a Motion to Dismiss [Document #9] by Defendants Town of Chapel Hill ("Chapel Hill"), Chapel Hill Chief of Police Gregg Jarvies ("Jarvies") and Chapel Hill Town Manager Calvin Horton ("Horton"), and a separate Motion to Dismiss [Document #13] by Chapel Hill Police Captain Everett Johnson ("Johnson"). Plaintiffs have filed a Motion to Amend [Document #19] seeking to add additional allegations to the Complaint. For the reasons discussed below, the Court concludes that the Motion to Amend [Document #19] will be allowed. The Court further concludes that the Motions to Dismiss [Documents #9, #13] should be granted in part and denied in part.

I.  FACTUAL BACKGROUND

Plaintiffs Brandon K. Jones ("Jones") and John W. Moore ("Moore") are former Chapel Hill police officers asserting claims related to their discharge from employment in June 2003. According to the Complaint, on or about May 6, 2003, Plaintiff Jones stopped a car driven by Mr. Ashley Wade. Following this stop, Mr. Wade filed a complaint against Jones with the Chapel Hill Police Department, alleging that Jones violated his civil rights during the stop. This event generated significant publicity in the area. The Police Department conducted an investigation and concluded that Jones had indeed violated Mr. Wade's civil rights. As a result, on June 12, 2003, Jones resigned from his position with the police department. Jones, who is white, contends that he was constructively discharged, and that the reasons given for his alleged discharge were a pretext for discrimination on the basis of race and sex.

With respect to Plaintiff Moore, the Complaint alleges that Moore was working as an Investigator for the Chapel Hill Police Department, assigned to the FBI's High Tech Crimes Task Force. According to the Complaint, on May 2, 2003, Moore conducted an interview with a potential witness while wearing a shirt which bore an FBI logo, although Moore had not been sworn in as a federal agent. The Chapel Hill Police Department investigated and concluded that Moore's conduct violated federal law. Moore contends that the FBI disagreed with this conclusion. However, the Chapel Hill Police Department also concluded that Moore's conduct was contrary to the mission and values of the Police Department. As a result, Moore was forced to resign on June 5, 2003. Moore, who is also white, contends that he was constructively

discharged, and the reasons given for his termination were a pretext for discrimination on the basis of race and sex.

Plaintiffs contend that as a result of their discharge and the release of information surrounding their discharge to the media, they suffered injury to their reputations and emotional distress. Moore also contends that Defendant Johnson made false statements concerning Moore to third parties, and that Defendant Jarvies provided false employment references concerning Moore, which prevented Moore from obtaining additional employment. Plaintiffs also contend that other employees who engaged in misconduct were not punished as harshly as Plaintiffs.

On February 4, 2004, Jones and Moore each filed a charge of discrimination with the EEOC alleging that they were discriminated against on the basis of race and sex. Jones' EEOC charge contended that the discrimination occurred on "06-11-2003" when he was discharged from his position as a police officer. Moore's EEOC charge contended that the discrimination against him occurred on "06-05-2003" when he was discharged from his position as an investigator. On February 9, 2004, EEOC dismissed the charges because they were not timely filed within 180 days after the alleged discrimination occurred.

Jones and Moore subsequently filed the present lawsuit asserting the following federal claims against Defendants Chapel Hill, Jarvies and Horton: (1) violation of 42 U.S.C. § 1981; (2) violation of 42 U.S.C. § 1983; and (3) violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. Plaintiffs also asserted the following state law claims against Defendants Chapel Hill, Jarvies and Horton: (1) intentional infliction of emotional distress; (2) slander and

3

libel; (3) tortious interference with business relations; (4) invasion of privacy and false light; and (5) breach of contract. As to Defendant Johnson, Plaintiffs assert only the state law claims for slander and libel.

Defendants have filed a Motion to Dismiss as to the Title VII claims and the § 1983 claims. Defendants have also moved to dismiss some of the state law claims. However, the parties have not addressed the viability of Plaintiffs' § 1981 claims or the propriety of this Court exercising jurisdiction in this case if no federal claims remain. Therefore, the Court will address here the Motion to Dismiss as to the Title VII claims and the § 1983 claims, and will then provide a framework for addressing both the viability of any remaining federal claims and the Court's exercise of pendent jurisdiction over the state law claims. However, before considering these issues, the Court will first consider Plaintiffs' Motion to Amend to add additional factual allegations.

II. MOTION TO AMEND

Rule 15(a) of the Federal Rules of Civil Procedure provides that "[a] party may amend the party's pleading . . . by leave of court . . . and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). While the decision to grant a party leave to amend a pleading is within the sound discretion of the trial court, that discretion is limited by the general policy favoring the resolution of cases on the merits. Island Creek Coal Co. v. Lake Shore, Inc., 832 F.2d 274, 279 (4th Cir. 1987). In exercising its discretion in resolving the question of whether to allow leave to amend, a court "should focus 'on prejudice or futility or bad faith as the only legitimate

4

concerns in denying leave to amend, since only these truly relate to protection of the judicial system or other litigants.' " Id. (quoting Davis v. Piper Aircraft Corp., 615 F.2d 606, 613 (4th Cir. 1980)).

In the present case, Plaintiffs seek to amend their Complaint to add certain factual allegations. Specifically, Plaintiffs seek to add an allegation clarifying that both plaintiffs have been diagnosed as suffering from post-traumatic stress syndrome, in support of Plaintiffs' emotional distress claims.[1] In addition, with respect to their § 1983 claims, Plaintiffs seek to add allegations further identifying the alleged "property interests" at issue.[2] Defendants oppose the Motion to Amend as futile, and also address the substance of the proposed amendments as part of their briefing with respect to their Motions to Dismiss.

In the interests of justice, and to ensure that any dismissal is made based on all of the

---

[1] This amendment would add the following sentence to Paragraphs 41, 70, and 77 of the Complaint: "He has since been diagnosed as suffering from post-traumatic-stress syndrome, stemming from the alleged conduct, for which he is receiving ongoing treatment."

[2] This amendment would add the following statement to Paragraph 93 of the Complaint: "Plaintiffs had a property interest in their respective reputations in the general community, their social status, as well as their reputations in the police community. Plaintiffs had a property interest in vested retirement benefits, the value of which was diminished by these actions. Plaintiffs had a property interest in their health, which has been harmed through the actions pled, leaving both Plaintiffs with post-traumatic stress syndrome as well as other negative health consequences of these actions of Defendants. Plaintiffs had a property interest in their employment, as related to the events in question, in that, but for the egregious and unlawful conduct of Defendants, Plaintiffs would still be employed, and that egregious and unlawful conduct leading directly and proximately to the end of their employment was in direct violation of the laws and Constitutions of both the State of North Carolina and the United States, with these protections being established by statute and Constitution."

5

allegations presented by Plaintiffs, the Court will allow Plaintiffs' Motion to Amend [Document #19]. The Complaint is hereby amended as set out in Plaintiffs' Motion to Amend. Therefore, in considering Defendants' Motions to Dismiss, the Court will consider Defendants' contentions in light of all of the allegations raised by Plaintiffs in the Complaint and in the allowed Amendment.

III. MOTION TO DISMISS TITLE VII CLAIMS

Defendants first move to dismiss Plaintiffs' Title VII claims as untimely. Pursuant to 42 U.S.C. § 2000e-5(e)(1), a charge of discrimination must be filed within 180 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e)(1). "A claim is time barred if it is not filed within these time limits." National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 109, 122 S. Ct. 2061, 2070, 153 L. Ed. 2d 106 (2002). "A discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.' A party, therefore, must file a charge within [180 days] of the date of the act or lose the ability to recover for it." Id. at 110, 122 S. Ct. at 2070-71.

In the present case, there is no dispute that Jones' employment terminated on June 12, 2003, and Moore's employment terminated on June 5, 2003. The EEOC charge, a portion of which was attached to the Complaint, was filed on February 4, 2004, more than 180 days after Plaintiffs' employment terminated. Plaintiffs do not contest this calculation of time or contend that the time period should be equitably tolled. Instead, Plaintiffs contend generally that "Defendants' actions were an ongoing violation that continued to this day." (Pl.'s Resp. at 2.)

6

However, Plaintiffs cite no case law or factual allegations in support of this contention. In fact, the United States Supreme Court has rejected such a "continuing violation" theory, and has held that "[d]iscrete acts such as termination" constitute a "separate actionable 'unlawful employment practice'" and plaintiffs "can only file a charge to cover discrete acts that 'occurred' within the appropriate time period." Morgan, 536 U.S. at 114, 122 S. Ct. at 2061. Simply put, an EEOC charge "must be filed within the [180-day] time period after the discrete discriminatory act occurred." Id. at 113, 122 S. Ct. at 2072.

Here, the only discriminatory act alleged by Plaintiffs in their EEOC charges was their alleged wrongful discharge. However, it is evident from the face of the EEOC charges that the claims were not filed within 180 days of when the alleged discriminatory acts (their discharges) occurred. Plaintiffs have not presented any factual or legal contentions to establish that their EEOC charges were timely filed with the EEOC. To the extent that Plaintiffs now contend that there was some unspecified, subsequent act of discrimination, Plaintiffs did not file any EEOC charges respecting any other alleged acts of discrimination. Therefore, Plaintiffs' Title VII claims are barred for failure to timely file an EEOC charge and failure to exhaust administrative remedies. For these reasons, Defendants' Motions to Dismiss as to Plaintiffs' Title VII claims will be granted.

IV. MOTION TO DISMISS § 1983 CLAIMS

Plaintiffs also bring claims pursuant to 42 U.S.C. § 1983, alleging that they have been deprived of property interests without due process and in violation of their right to equal

7

protection. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." Board of Regents v. Roth, 408 U.S. 564, 569, 92 S. Ct. 2701, 2705, 33 L. Ed. 2d 548 (1972). With respect to this claim, Plaintiffs allege that they have lost protected property interests based on the loss of their employment, including their prospective salary, benefits and retirement plan; their loss of social status and reputation; their loss of employability; and their extreme emotional distress and related health issues. Defendants have moved to dismiss, contending that Plaintiffs have not alleged the deprivation of any constitutionally-protected property interests.

The Court of Appeals for the Fourth Circuit has specifically addressed the question of what rules apply when a discharged local government employee claims deprivation of a constitutional property interest. See Jenkins v. Weatherholtz, 909 F.2d 105 (4th Cir. 1990). In Jenkins, the Fourth Circuit stated that:

> The principles generally applicable when a discharged state or local government employee claims deprivation of a protectible property interest in continued employment are well established. . . . Property interests in continued employment are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law – rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Id. at 577, 92 S. Ct. at 2709. To support such a claim to benefits and therefore create a protected property interest, state law rules and understandings must provide a "sufficient expectancy of continued employment." See Bishop v. Wood, 426 U.S. 341, 344, 96 S. Ct. 2074, 2077, 48 L. Ed. 2d 684 (1976). A local government employee serving "at the will and pleasure" of the government employer has no legitimate expectancy of continued employment and thus has no protectible property interest. See id. at 345 & n.8, 96 S. Ct. at 2078 & n.8."

8

Jenkins, 909 F.2d at 107. To the extent that a property interest in employment must derive from state law, North Carolina courts have clearly "adhered to the employment-at-will doctrine" and have concluded that "[a]n employee at will has no property interest by virtue of her employment." Evans v. Cowan, 132 N.C. App. 1, 6, 510 S.E.2d 170, 174 (1999). A statute or ordinance may create a property interest in continued employment, but local employees are generally "at-will" and an employment manual adopted by county resolution is "insufficient to create a property interest analogous to that of a statute or ordinance." Kearney v. County of Durham, 99 N.C. App. 349, 352, 393 S.E.2d 129, 130 (1990); see also Soles v. City of Raleigh, 345 N.C. 443, 447, 480 S.E.2d 685, 688 (1997) (holding that a city employee "possessed no constitutionally protected property interest in his continued employment with the City," and the City personnel manual or personnel policies did not create any protected interests).

In the present case, Plaintiffs do not cite to or allege the existence of any statute or local ordinance creating any employment guarantee or otherwise creating any right or entitlement to employment, and Plaintiffs were clearly "at-will" employees under state law. Based on the well established rules cited above, Plaintiffs do not have a constitutionally protected property interest in their employment (including salary and other benefits) to support a claim under § 1983.

In addition, to the extent that Plaintiffs claim some injury to their reputation, the U.S. Supreme Court has clearly rejected the contention that defamation or damage to reputation could amount to a constitutional deprivation in these circumstances. Siegert v. Gilley, 500 U.S. 226, 111 S. Ct. 1789, 114 L. Ed. 2d 277 (1991). In Siegert, the Supreme Court considered claims by

9

a government employee who was forced to resign, and whose supervisor then sent allegedly defamatory letters to his future employers, resulting in the plaintiff's inability to obtain other employment in his field. After considering this alleged damage to reputation and to future employment prospects, the Supreme Court held that while these injuries might be the basis for a state law claim, they did not establish the violation of any constitutional right, since injury to reputation is not a constitutionally protected interest. Id. at 233, 111 S. Ct. at 1794. Based on this case law, the Plaintiffs in the present case have failed to allege any deprivation of a constitutionally protected property interest based on alleged defamation, damage to their reputation, or loss of future employment prospects.[3]

In conclusion, after reviewing all of Plaintiffs' allegations, including the allegations in Plaintiffs' Amendment to the Complaint, the Court concludes that Plaintiffs have failed to allege any constitutionally protected interest of which they were deprived. Therefore, Plaintiffs' § 1983 claims fail as a matter of law. As such, Defendants' Motion to Dismiss as to Plaintiffs' § 1983 claims will be granted, and Plaintiffs' § 1983 claims will be dismissed.

---

[3] To the extent Plaintiffs might contend that they were deprived of a "liberty" interest as well as a property interest, the Supreme Court in Siegert clearly held that a discharged public employee alleging defamation by their former employer did not allege deprivation of either a liberty interest or a property interest. See Siegert, 500 U.S. at 226, 111 S. Ct. at 1789 (holding that damage to reputation, including loss of future employment prospects, did not involve a "liberty" interest and did not establish the violation of any constitutional right). In the same way, Plaintiffs in the present case have failed to allege any constitutionally protected interest, either liberty interest or property interest.

## V. REMAINING STATE LAW CLAIMS

Plaintiffs also assert various state law claims, and Defendants have moved to dismiss some of those claims. However, the parties have not addressed the viability of any remaining federal claims or the question of whether this Court should exercise pendent jurisdiction over these state law claims. See 28 U.S.C. § 1367(c) (providing that district courts may decline to exercise supplemental jurisdiction where state claims substantially predominate or where the federal claims have been dismissed); United Mine Workers of America v. Gibbs, 383 U.S. 715, 726-27, 86 S. Ct. 1130, 1139, 16 L. Ed. 2d 218 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. Similarly, if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals.").

The Court in the present case declines to address substantive issues of state law without first considering the viability of any remaining federal claims on which to rest jurisdiction. See Gibbs, 383 U.S. at 726, 86 S. Ct. at 1139 ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."). Therefore, Defendants will be given 45 days within which to file a motion addressing the viability of any remaining federal claims, with appropriate periods for a response by Plaintiffs and a reply as provided by the Local Rules. If, after reviewing those filings, the Court concludes that there is no viable federal claim, then the remaining state claims

11

will be dismissed pursuant to 28 U.S.C. § 1367(c) without prejudice to Plaintiffs pursuing those claims in state court. However, if the Court concludes that there is a viable federal claim, the Court will then allow Defendants the opportunity to address the state law claims at that time. For this reason, Defendants' present Motion to Dismiss with respect to the state law claims will be denied.

VI.     CONCLUSION

For the reasons discussed above, Plaintiffs' Motion to Amend [Document #19] will be GRANTED, and Plaintiffs' Complaint will be amended as set out in the Motion to Amend. In addition, Defendants' Motions to Dismiss [Document #9, #13] will be GRANTED IN PART AND DENIED IN PART. Specifically, the Motions to Dismiss will be GRANTED with respect to Plaintiffs' federal claims brought pursuant to Title VII and § 1983, and those claims will be DISMISSED WITH PREJUDICE. However, the Motions to Dismiss will be DENIED at this time with respect to Plaintiffs' state law claims because the Court is not inclined to exercise pendent jurisdiction over the state law claims if there is no viable federal claim. Therefore, Defendants will be given 45 days within which to file a motion addressing any remaining federal claims, with appropriate periods for a response by Plaintiffs and a reply as provided by the Local Rules. If the Court concludes that there is a viable remaining federal claim and that the exercise of pendent jurisdiction is appropriate, Defendants will then be given an opportunity to address any state law claims asserted by Plaintiffs.

An Order consistent with this Memorandum Opinion will be filed contemporaneously

herewith.

        This, the 2nd day of December, 2005.

                                                                                             /s/ James A. Beaty
                                                                     United States District Judge